## JAGODNIGG v. UNITED STATES.

(District Court, W. D. Missouri, W. D. February, 1924.)

No. 5387.

1. **Army and navy ⊚═51½, New, vol. 12A Key-No. Series—Actual service in navy held to render applicant eligible for war risk insurance.**

Where plaintiff was accepted for and actually served in the United States Navy for approximately a year, *held*, that he possessed sufficient mentality .to render him eligible for war risk insurance.

2. **Army and navy ⊚═51½, New, vol. 12A Key-No. Series—Insured under war risk insurance policy entitled to benefits for injury not of service origin.**

Where the insured under a war risk insurance policy is suffering from a total and permanent disability, he is entitled to benefits under the policy, whether the disability is the result of an injury of service origin or is due to other causes.

3. **Army and navy ⊚═51½, New, vol. 12A Key-No. Series—When insured is "totally disabled" within war risk insurance policy.**

Within a war risk insurance policy and the definition of the War Risk Insurance Bureau, stating that any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed to be total disability, an insured is totally disabled when he is unable to earn substantially through independent efforts; hence a contention that insured is not totally disabled, because he is capable of performing some simple kind of physical labor under immediate direction and supervision, is untenable.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Totally Disabled.]

At Law. Action by Jacob Max Jagodnigg, by his guardian, George B. Reinhardt, against the United States. Judgment for plaintiff.

George B. Reinhardt, of Kansas City, Mo., for plaintiff.

C. C. Madison, U. S. Atty., and H. L. Donnelly, Asst. U. S. Atty., both of Kansas City, Mo., and John M. George, Atty. U. S. Veterans' Bureau, of Washington, D. C., for the United States.

VAN VALKENBURGH, District Judge. This is a suit brought to recover upon a policy of war risk insurance issued to the plaintiff in the sum of $10,000. The claim is for total and permanent disability.

The plaintiff entered the United States naval service April 6, 1917. March 18, 1918, he made application for $10,000 war risk insurance, making the same payable to his father and mother in equal shares in case of death. After his induction into the service he spent a period in training and then was assigned to the United States ship Von Stueben, a transport, employed between American ports and Brest, France. He made several trips across the ocean in this service. March 5, 1918, a cannon aboard the Von Stueben exploded, and a flying fragment struck plaintiff in the thigh, inflicting a lacerated wound. As a result thereof he was confined in the United States Hospital at Brooklyn, N. Y., from March 5, 1918, to August 7, 1918, on which date he was discharged from the service. Payments upon the policy have since been discontinued, but no point is made that the policy was not in force at the time his present mental condition supervened.

The contention made on behalf of the plaintiff is that as a result of the accident on shipboard he has been reduced to a mental state amounting to total disability, and that, in any event, whether due to the accident or not, that state of disability exists and entitles him to his insurance. The government, on the other hand, contends that his present condition was in no wise brought about by casualty in the service, and in addition thereto that the plaintiff is a constitutional defective, was such when he entered the service, and is now not otherwise than at the time of his enlistment; that he was not insured against any defect of mind or body which existed at the time his application for insurance was made. The claim of total disability is likewise contested.

Two eminent medical experts were introduced by the plaintiff. Dr. Kuhn testified that the plaintiff is suffering from a mental condition known as "dementia præcox." This is otherwise known as "early dementia" and is peculiar to young people. It often manifests itself in those who have exhibited early precocity. Its cause is unknown. It sometimes remains latent for years and then manifests itself in the form of lack of continuity and the loss of power of concentration. It is constitutional rather than congenital, and not in a true sense progressive. In other words, it may make itself known at a later period without premonition. Dr. Kuhn does not think shock would necessarily be an exciting cause. Dr. Robinson finds the plaintiff mentally retarded, and not up to the standard of mental development, nervous, and restless; does not think this to be a case of dementia præcox, but, on the contrary, that the plaintiff was retarded in early life and remained so.

The witness Turner, now in civil life, but who was the officer through whom plaintiff enlisted, says the then applicant was good enough to enlist under the law applying to the United States navy. This means, of course, that he was not necessarily a man of high intelligence, but he must have possessed sufficient mentality to warrant being inducted into the service, from whom might be expected the ability to discharge acceptably the requirements of that service. Such men were eligible for war risk insurance. The government further introduced evidence tending to show that as a boy plaintiff was backward in his school; was unable to learn readily and to make normal progress. At that time special schools for those below a certain degree of mentality had not been established in this city. The grade schools were crowded, and the teachers were unable to give intensive aid to the backward, but, on the contrary, conceived it to be their duty to advance those more susceptible to training.

[1, 2] Section 300 of the War Risk Insurance Act, as amended March 4, 1923 (42 Stat. 1521), provides:

"That for the purposes of this section every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department who was discharged or who resigned prior to August 9, 1921, and every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department on or before November 11, 1918, who on or after August 9, 1921, is discharged or resigns, shall be conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities, made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service, to the extent to which any such defect, disorder, or infirmity was so made of record."

The plaintiff contends that this section precludes the government from claiming that the present defect existed at the time of enlistment; the government, that it applies only to compensation, and not to war risk insurance. In my opinion, this dispute need not be decided. Independently of this provision, under the evidence adduced, the plaintiff must be held to be a man eligible for insurance, who was not at that time totally, nor even appreciably, disabled. He presented himself for enlistment. He was examined and accepted. He served without challenge for approximately a year, during which time he traversed the ocean on a naval vessel, exposed to danger and to death. He suffered a casualty incidental to the war; one which placed him in a hospital for a period of five months. If he is now suffering total disability, whether as the result of that casualty or because of disease, which has attacked him since his insurance was taken out, and which would be covered by his policy in any event, it would seem that the government is in a poor position to insist that he was suffering from the same disability when he entered the service. The government accepted him and used him until this accident occurred. No record was made of any claimed existing inability or impairment, at the time of, or prior to, inception of active service. We should not play fast and loose with those who have exposed their lives in the country's service.

[3] That he is now a man suffering from total and permanent disability I have no doubt; that is the weight of the medical testimony, and it is the weight of the lay testimony. It is, however, urged that he is not totally disabled, because he is capable of performing some simple kind of physical labor under immediate direction and supervision. It is agreed that his mental condition, whatever that may be, is permanent. The War Risk Bureau has defined total disability as follows:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in articles III and IV, to be total disability."

This certainly does not mean that the requirement "to follow continuously any substantially gainful occupation" shall be satisfied by the performance of some negligible duties under the supervision and direction of a guardian or caretaker. What is meant is clearly the ability of the soldier to earn substantially through independent effort. This young man has physical strength, but he is less than a child in mind. He has been judicially held to be incapable of managing his own affairs. He is under guardianship, but, since his compensation from the government has been discontinued, no means are provided for his support; as a consequence he is an inmate of the National Soldiers' Home at Leavenworth. I cannot avoid the conclusion that he must be held to have been a fit subject for insurance when he entered the service; that he has since become totally and permanently impaired in mind. It matters not whether this is the result of his injury on shipboard or is due to other causes.

Judgment for the plaintiff will be entered accordingly.