## STARNES v. UNITED STATES.

(District Court, E. D. Texas, Tyler Division.
May 7, 1926.)

No. 2690.

1. Insurance ⬅524—"Total disability" is impairment of mind or body rendering it impossible for disabled person to follow any occupation, and is deemed permanent when founded on conditions rendering it reasonably certain throughout person's life.

"Total disability" is an impairment of mind or body rendering it impossible for disabled person to follow continually any substantial occupation, and is deemed permanent when founded on conditions rendering it reasonably certain throughout life of person suffering from it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Disability.]

2. Army and navy ⬅51½, New, vol. 12A Key-No. Series.

Policy of war risk insurance is a contract, and every reasonable presumption must be indulged in favor of insured.

3. Army and navy ⬅51½, New, vol. 12A Key-No. Series—Insured under war risk insurance held entitled to recover, where he became totally disabled during service, whether disability resulted from service or from remote conditions with which service had nothing to do.

Insured under contract of war risk insurance held entitled to recover for total disability, if he became totally disabled during service, whether disability resulted from service or from remote conditions with which service had nothing to do.

4. Army and navy ⬅51½, New, vol. 12A Key-No. Series.

Evidence held to show that enlisted man, holding policy of war risk insurance, had become totally disabled, precluding his engaging in any gainful work.

At Law. Action by Charlie Joe Starnes, by next friend, J. W. Starnes, against the United States. Judgment for plaintiff.

David Wuntch, of Tyler, Tex., Lyle Saxon, of Dallas, Tex., and Winfree & Weslow, of Houston, Tex., for plaintiff.

Randolph Bryant, of Sherman, Tex., for the United States.

ESTES, District Judge. The plaintiff here enlisted in the navy on January 7, 1918, and was discharged on June 22 thereafter. During that time he procured war risk insurance to the extent of $10,000, for which he, through his father as next friend, sues. It is claimed that during the life of this insurance contract he became a psychopathic type to an extent that he was, and still is, and will continue to be, an irresponsible person, and was thereafter, and is now, totally and permanently disabled. A claim for compensation is set up in the petition, but that has been abandoned by the plaintiff, and the suit is for the value of the policy.

The government denies that he was totally disabled. Among other things it alleges that such disability as now exists is due to a constitutional defect or congenital condition; that his trouble, therefore, did not originate during his service, and, furthermore, is not of a type that will prevent him from pursuing a gainful occupation.

There is much testimony on the issue thus raised. I shall not undertake, in this memorandum, to review it in detail. Speaking in general terms, it is shown that the plaintiff, after a physical examination, was considered acceptable for service in the navy, and that his discharge was on account of his mental condition. At first full compensation, under the provisions of the statute, was allowed him; subsequently, half compensation; and, finally, payments were discontinued. During that time unsuccessful attempts at vocational training were made. The reports were not only that vocational training was not "feasible," but that the degree of his vocational handicap is "major." The plaintiff, since his discharge, has attempted work on his own account, but his efforts proved to be failures; that is, his work was inefficiently done, and was continued but a relatively short while. The members of his family and others acquainted with the plaintiff during his boyhood have attested his normal mentality and physical fitness prior to his enlistment, and have described the symptoms he has manifested since then as disqualifying him for almost any occupation.

I infer from the evidence that his mental ailment cannot properly be denominated insanity. The idiosyncrasies or peculiarities of conduct he has displayed are due, according to the physicians who testified for the government, and whose judgment, in my opinion, is correct, to a constitutional defect. They entertain the belief that he is capable of pursuing such occupations as he could have followed prior to his enlistment. They think, in other words, that his mental condition is such as would likely have developed, in the natural order of things, when he matured into manhood, and that it does not entirely destroy his ability to work.

[1] I think it is immaterial, as regards the disposition to be made of the case, whether the cause of the plaintiff's plight is congenital or constitutional, or whether it is something that developed in connection with and as a

result of the work he did in the navy. The important point is that during the life of the policy he became disabled, and in that state of affairs the question to be settled is whether the disabilities are "total and permanent," within the meaning of those words as used in the statute. They do not necessarily imply an incapacity to do any work at all. "Total disability is any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantial gainful occupation. It is to be deemed permanent whenever it is founded upon conditions which render it reasonably certain throughout the life of the person suffering from it."

[2, 3] The policy is a contract. In the consideration of it every reasonable presumption must be indulged in favor of the plaintiff. He was an enlisted man, and the whole scheme of war risk insurance was designed to benefit men who thus served, and who, from any cause during the period of their service, became disabled. Great liberality of construction must therefore be indulged. If this plaintiff can be said to have become totally disabled during his service, even though the cause of it may be traced back to remote conditions, with which his service had nothing to do, I think he should recover a judgment here. The very purpose of the insurance was to protect the service man against such a misfortune.

[4] The evidence here, in my opinion, shows that the plaintiff cannot now engage in any gainful work. He has, as I have indicated, been declared unfit to pursue avocations that he undertook to follow when receiving compensation. His subsequent attempts to work, according to the testimony, proved unsuccessful. The postmaster under whom he worked in Oklahoma employed him originally in the stress of necessity, and said he discharged him at the first opportunity on account of the unsatisfactory and inefficient manner in which he discharged his duties. While his employer in the automobile shop, where he seems to have been employed for as long as three months, testified that there was no complaint of what he did, I think it appears that he did not make very close observation of the plaintiff's performances. On the other hand, the men who worked with him there said substantially that he was unequal to the tasks assigned to him.

The physicians for the government expressed the belief that, despite these facts, he can resume work on a farm and live along in an atmosphere and environment such as he was accustomed to before his enlistment.

This is necessarily a speculation or opinion on the part of these witnesses, which is worthy of and has been given much consideration. But it may or may not be correct. The evidence of those associated with him in his home is to the effect that he cannot do such work—that his frailties of mind and body render such occupation impossible.

So we have a case where the record shows an enlisted man in whose favor a policy of insurance was issued, who was dismissed from the service on account of his mental condition, who is unfit for vocational training, who is presently suffering from a condition of mind that, to say the least of it "reacts to life as a typical psychopath," and who, until this time, is totally disabled for work.

It would be a presumption, unsupported by the testimony, to say that this disability will not be permanent. The whole trend of the evidence is that it will be permanent. If at a later time it should develop that a change has been wrought, that the cloud has been lifted from this man's mind, and that he can perform work, the statute provides a method by which the payments to him, under the policy, may be discontinued. But with the record before the court here it would, in my opinion, be an injustice to him, and would not reflect the spirit of the government with respect to those who present themselves for service in time of national stress and peril, to deny to him now the aid which this policy was designed to render.

Let judgment be prepared, therefore, in favor of the plaintiff.