### UNITED STATES v. COX.

Circuit Court of Appeals, Fifth Circuit.
March 12, 1928.

No. 5117.

**I. Army and navy** ⟳51½—**War risk policies and law under which issued are entitled to most liberal construction in favor of soldier.**

War risk policies and the law under which they were issued are entitled to the most liberal construction in favor of the soldier.

**2. Army and navy** ⟳51½—**Soldier, discharged as partially disabled and later adjudged lunatic, held totally disabled, so as to mature war risk policy.**

Soldier, discharged as one-half disabled, afterward adjudged a lunatic, and who because of his condition was able to secure employment only at intervals, *held*, totally disabled within the meaning of war risk insurance legislation and regulations, so as to mature war risk policy.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action at law by Julia W. Cox, guardian of Earl Jonah Cox, non compos mentis, against the United States. Judgment for plaintiff, and defendant appeals. Affirmed.

Norman A. Dodge, U. S. Atty., of Fort Worth, Tex., and Eric Eades, Regional Attorney, U. S. Veterans' Bureau, of Dallas, Tex.

Clarence Carpenter, of Dallas, Tex., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellee, as guardian, brought suit under the provisions

of section 445, tit. 38, U. S. C. (38 USCA § 445), to recover on a policy of war risk insurance of $10,000, payable in monthly installments of $57.50, issued to Earl Jonah Cox, on the ground that said policy had matured because he had become totally disabled while in the service of the United States from shell shock, which rendered him insane and incapable of continuously following any gainful occupation. The case was tried without the intervention of the jury, and resulted in a judgment for appellee as guardian of the soldier for $5,232.50, the amount of accrued and unpaid installments, and for further monthly payments of $57.50 under the terms of the policy.

The evidence is not in the record, but the court made rather extensive and comprehensive findings of fact, which were not excepted to. Those material to a decision are, in substance, as follows:

Earl Jonah Cox, when mentally and physically sound, was drafted in the military service of the United States March 7, 1918. On March 15, 1918, he was granted the policy sued on, and while in the military service of the United States he became totally mentally unbalanced, and was treated in various military hospitals for his mental illness. After his return to the United States, he was in the Cook County Hospital, suffering from dementia præcox, and was insane, and thereafter he was transferred to the military hospital at San Antonio. He was granted a furlough from that hospital to return to his mother in Dallas, Tex., and went there in care of an attendant. He was returned to the military hospital at San Antonio with an attendant, and on July 17, 1919, was honorably discharged from military service, on a certificate of disability, by reason of dementia præcox, and was reported by the discharging officer as one-half disabled. He was returned to his home in Dallas with an attendant or guard. The policy was in force when he was discharged and up to August 31, 1919. No premiums were paid after July, 1919. In a proceeding which was instituted at the request of the Veterans' Bureau, he was adjudged to be a lunatic by the county court of Dallas county, Tex., on September 14, 1919. Subsequent to his discharge from the service, he was erratic, argumentative, and radical in his actions, and for several months subsequent to his discharge from the service he made no effort to engage in any kind of employment. Prior to his entry into military service, he was a motion picture operator, and he was employed as such in a moving picture theater

24 F.(2d)—60

by R. G. Wright, who was a friend of the family, from May, 1920, for a period of about 12 months, at a salary of $25 per week, which wages were paid directly to him and were not received by his guardian. While so employed, he was peculiar and cranky, and on one occasion quit work and told his employer that the patronage of the show did not justify the payment of his salary, although he had never failed to receive it. His employer did not know he had been adjudged a lunatic, or was under guardianship, and, because he was a friend of the family, his employer tolerated talk and argument from Cox that he would not have put up with from a stranger, but his operation of the picture machine was satisfactory. He was discharged from that employment when the theater changed hands, and after that he was employed as a motion picture operator in various theaters for short periods, but his services were unsatisfactory, and he was discharged for that reason. The court specifically found that Cox was of unsound mind at the time he was discharged from military service, and continuously from that date until the present time he has been of unsound mind, unable to continuously follow any substantial, gainful occupation, and therefore is now, and has been ever since his discharge from the military service of the United States, permanently and totally disabled.

The theory of the government seems to be that Cox was able to secure employment at his former occupation within a month or two after he was discharged, and therefore could not be considered totally and permanently disabled, so is not entitled to recover on the policy at all; and further, perhaps, that during his employment he should have paid the premiums on his policy. In support of this a number of cases dealing with contracts of accident insurance are cited.

[1] Cases dealing with ordinary contracts of insurance are generally not applicable when considering policies of war risk insurance. A policy of war risk insurance is more or less a gratuity from the government, and was so designed to be. The United States assumed all of the extraordinary risks of war, and issued for the minimum premuim what might be termed combined accident and life insurance policies, largely in return for the sacrifice to be made by the men of the United States in defense of their country. These policies and the law generally are entitled to the most liberal construction in favor of a soldier. U. S. v. Law (C. C. A.) 299 F. 61. Congress has also been very liberal

in enacting measures for the relief of disabled soldiers and in permitting the keeping alive and reinstatement of war risk insurance policies. Regardless of whether he was able to follow any gainful occupation, Cox was discharged as one-half disabled. Therefore he was entitled to compensation in some amount, and, whether actually awarded him or not, it could have been applied to the payment of premiums if any were due. Baker v. U. S., 24 F.(2d) 766, decided by this court March 5, 1928. However, the payment of premiums after his discharge from service was not required, if he was at that time totally and permanently disabled within the meaning of the law, as the policy was then matured, and all premiums due had been paid.

[2] The regulations adopted by the, Bureau of War Risk Insurance define permanent and total disability as follows:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any. substantially gainful occupation shall be.deemed, in articles III and IV, to be total disability.

"'Total ·disability' shall be deemed to be 'permanent' whenever it is founded upon conditions. which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in article IV on the ground that the insured has become totally and permanently disabled, has recovered the ability to continuously follow any substantially gainful occupation, the payment of installments of insurance shall be discontinued forthwith, and no further installments thereof shall be paid so long as such recovered ability shall continue."

There could be no doubt that the facts found bring the case fairly within the intention and meaning of this regulation, as we do not think his. temporary employment, under the conditions existing, would be sufficient to show that Cox was not permanently disabled. As an interdict he was incapable of entering into a legal contract of employment, and it is reasonably certain that he could not have secured employment from any but a friend who would put up with his idiosyncrasies. Ability to continuously follow a substantial, gainful occupation implies ability to compete with men of sound mind and average attainments under the usual conditions of life. Argument is not needed to demonstrate that one who has been officially declared insane and has exhibited the

vagaries that Cox did could not successfully so compete, although he might have lucid intervals in which he could render satisfactory service. This conclusion finds support in the reasoning of the court in the following cases: Starnes v. U. S. (D. C.) 13 F. (2d) 212; Jagodnigg v. U. S. (D. C.) 295 F. 916; Forbes, Dir.,'v. Welch (App. D. C.) 286 F. 765.

The judgment appealed from is amply supported by the findings of fact. The government can suffer no injustice in this case. The law regards insanity as a temporary condition, though it usually exists until death. If in the future Cox should regain his mind, the way is open to have his interdiction set aside, and his status as a sane person restored.

We find no error in the record.

Affirmed.