## KNIGHT v. UNITED STATES.
### No. 175.

District Court, D. Maine, S. D.
Nov. 19, 1930.

Supplementary Opinion Dec. 2, 1930.

Francis W. Sullivan, of Portland, Me., for petitioner.

William B. Nulty, Asst. U. S. Dist. Atty., and Francis Welch, Atty., U. S. Veterans' Bureau, both of Portland, Me.

PETERS, District Judge.

This suit was brought under the War Risk Insurance Act (World War Veterans' Act 1924, 43 Stat. 607), after a disagreement between the Veterans' Bureau and the plaintiff, and was heard by the court without a jury by virtue of a stipulation to that effect.

The petition as amended sets out a cause of action and raises the simple question whether the plaintiff's intestate, one Pierce Knight, a World War veteran, who took out his insurance in February, 1918, had suffered total permanent disability, as that term is construed in this connection, on or before August 31, 1919, the last day of grace after the expiration of his contract with the government by cancellation.

I find from the evidence the following facts: The soldier returned from overseas service in March, 1919, in apparent good health, and was assigned to duty at Ft. Williams, Me., as a cook. In May of that year he began to have attacks in the nature of convulsions, increasing in frequency, occurring at any time or place without warning, described by some physicians as epileptic fits, by others, who have studied the medical records, as uremic seizures, consequent upon the condition of acute nephritis with which he was suffering.

According to the records of the Army Hospital at Ft. Williams, he was admitted there May 24, 1919, with "cause of admission, nephritis, acute, severe." He was in the hospital twenty days and returned to duty June 12. Admitted again July 20, "cause of admission, nephritis, acute," and returned to duty July 30. Was admitted to hospital again September 12, "cause of admission, constipation, spastic," returned to duty September 17. Admitted to hospital December 2, "cause of admission, dislocation of subclavian, head of rt. humerus, accidently incurred by falling from bed and striking on floor. This during an epileptic seizure at his home, Cape Cottage, Me., on December 1, 1919. 2. Fracture, simple, incomplete, greater tuverosity, right humerus, incurred as in 1. 3. Epilepsy." At this time the soldier was in the hospital until March 20, 1920. During that period his enlistment expired

and he was immediately re-enlisted with the hope of benefiting him by medical treatment, which hope was vain, however, because he was then suffering, among other things, with chronic, progressive nephritis, or Bright's disease, and was recorded on the medical records as totally disabled as of June 28, 1920. He was for a long time in other hospitals, including Walter Reid Hospital in Washington, and died in 1925, the cause of his death being given as apoplexy. His condition and medical history after August 31, 1919, are important as throwing light on his condition before that date.

█ The point is made by counsel for defendant that the soldier was not totally disabled because he returned to duty from the hospital and was on duty, so far as appears from the records, for the greater part of the time from June 12 to August 31st. Doubtless he performed some duty, but apparently he was not fit for duty and was enabled to keep up the appearance of performing duty, at least in part, through the kindly assistance of a fellow soldier who was working with him as a cook. Cook Ramsey testifies, referring to Knight's falling in the kitchen: "We helped him up and pretty soon he got all right and went on four or five days—something like that—and then he had a fit and we grabbed him and rubbed him and got him going and pretty soon he didn't know what it was all about. When he came to himself he was surprised himself and wanted to know what happened. And another day, in a few more days, the same thing happened again. We got him out of that. Another time he was supposed to come on duty on a Sunday morning and he started from his house and he had the same thing and he fell and couldn't get up there. So he sent his brother-in-law to tell me he couldn't work—so I told him it was all right. I would take it straight through. Another day he came on duty at noon, or around two o'clock—between one and two o'clock in the afternoon. I wasn't in and he had the kitchen police and he had the same kind of a spell when he happened to be in the other room and fell on the bed, and the Captain was in the office and he came and that is when they relieved him."

I regard as of no particular significance the fact that the soldier was enlisted in December, 1919, immediately upon the expiration of his then enlistment, and that he described himself, and was certified by the medical officer, as fit for duty. He clearly was far from that condition. Both a medical officer and an old army sergeant testified that re-enlistment under such circumstances did not mean good health, but rather a desire to give the sick soldier the benefit of further hospitalization. He was in the hospital at the time.

I agree with Dr. Hunt in his emphatic and definite testimony that the soldier was totally and permanently disabled "from the time his nephritis first became so manifest that he went into the army hospital, that is, May 1919."

█ The fact that this man did some work during the summer is only some evidence that he was not incapacitated. It is not conclusive. A man may work when it is not proper for him to do so, from a medical standpoint. He may be assisted through a job by sympathetic companions or permitted to hold it by a kind-hearted employer. The criterion is the ability to hold a job or perform labor in the ordinary competition of life. "Ability to continuously follow a substantial, gainful occupation implies ability to compete with men of sound mind and average attainments under the usual conditions of life." U. S. v. Cox (C. C. A.) 24 F.(2d) 944, 946.

"The term 'total and permanent disability' obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation. These policies and the statutes applicable to the same are entitled to a liberal construction in favor of the soldier." U. S. v. Sligh (C. C. A.) 31 F.(2d) 735, 736.

The soldier in this case was suffering from acute Bright's disease so severe as to cause him to fall in a fit at any time without warning. The disease developed into the chronic progressive type of nephritis, with the uremic fits and almost total blindness which remained with him to the end. From this point of view, having the whole story before us, it seems reasonably clear that, after May, 1919, he was never physically able to go out into the world on his own account and follow continuously any substantially gainful employment. Under the rules adopted for the construction of the act he was totally and permanently disabled during the life of the policy.

The findings of fact asked for by the defendant are either negatived by the above findings or are not pertinent to the issue as I have stated it.

Judgment will be entered for the plaintiff for the payments due with interest, and that the bureau shall make such future payments as are provided for in the contract. An attorney's fee of 10 per cent. will be taxed as provided by law.

### Supplementary Opinion.

■ Since my opinion in the above-named suit was filed November 25th, my attention has been called to the decision of the United States Supreme Court in U. S. v. Worley, 281 U. S. 339, 50 S. Ct. 291, 74 L. Ed. 887, in which the Supreme Court answers certain questions propounded by the Circuit Court of Appeals for the Eighth Circuit, and holds that, in these cases brought under the War Risk Insurance Act no interest is allowable against the United States upon the monthly installments found due as provided in the act, and therefore the judgment previously ordered will be entered without interest.

Also, the defendant, through its counsel, asks the court for more specific rulings on its requests for findings, which requests are as follows:

1. The defendant requests the court to make a finding of fact that the insured continued the work for which he was fitted after cancellation of his policy and from the date of cancellation, July 15, 1919, to date of termination of enlistment.

2. The defendant asks the court to make a finding of fact that, on the basis of government records of examination for re-enlistment, the insured was declared fit for military service, and that he did not apply for, nor was he granted, any insurance protection during his final enlistment.

3. The defendant requests the court to make a finding of fact that the insured did serve in the military force of the United States with continuity of pay from July 15, 1919, date insurance was canceled, up to and including December 24, 1920; and that because he revoked his policy of insurance he was without protection from August 31, 1919, expiration of the 31-day grace period, up to December 24, 1920, date of his discharge.

As to the first request, if it means that the soldier continued the work for which he was fitted in the sense only that he continued his enlistment as a soldier, then of course the statement is correct, because he remained in the Army until some time after the expiration of his insurance. If it means that while he was in the Army, after May, 1919, until the expiration of his last enlistment, he was fitted for duty as a soldier, then I refuse the finding, because I have already found that he was totally and permanently disabled under the terms of the policy prior to August 31, 1919.

I find, in accordance with the second request, that on the basis of government records of examination for re-enlistment the soldier was declared fit for military service, and that he did not apply for, nor was he granted, any insurance during his final enlistment which began the latter part of December, 1919.

In accordance with the third request of the defendant, I find as requested that the soldier did serve in the military force of the United States without loss of pay from July 15, 1919, the day his insurance was cancelled, up to and including December 24, 1920, and that he was without protection from insurance from August 31, 1919, to the date of his discharge.

The only change in the judgment will be that it is ordered without interest.