## UNITED STATES v. FULKERSON.
### No. 7184.

Circuit Court of Appeals, Ninth Circuit.

Oct. 23, 1933.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash., and Anthony Savage, U. S. Atty., of Seattle, Wash. (Davis G. Arnold and C. L. Dawson, both of Washington, D. C., and Lester E. Pope, of Seattle, Wash., Attys. Veterans' Administration, of counsel), for the United States.

Earl W. Benson, of Walla Walla, Wash., and Barge E. Leonard and C. Laird McKenna, Jr., both of Portland, Or., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

From a verdict and judgment in favor of appellee, plaintiff below, on a policy of war risk insurance, the appellant has brought this appeal.

The plaintiff alleged that on April 9, 1919, he was totally and permanently disabled by reason of neurasthenia, psycho-neurosis, and maniac depressive insanity. The policy was in force, by reason of payment of premium, until April 30, 1919.

At the conclusion of plaintiff's case, the government made the usual motions for dismissal or for a directed verdict, which motions were denied. At the conclusion of all the evidence, the motions were renewed, with the same result.

The assignments of error are predicated upon the refusal of the court to grant these motions which were based upon the ground that the evidence adduced did not prove any permanent or total disability while the insurance was in force. The sole question before us, therefore, is whether there was any substantial evidence of total and permanent disability to support the verdict.

The enlistment record of the plaintiff, admitted in evidence, shows, among other things, that he received his honorable discharge from the military service on April 9, 1919, by reason of: "Maniac depressive insanity. (Recovered)" and that his "physical condition when discharged" was "poor."

The testimony of the plaintiff was to the effect that he entered the Army in December

of 1917 and was sent to Jacksonville, Fla.; that he did not know how long he was there, but was in the hospital "for a long, long time." No testimony of his hospital record was introduced by plaintiff, but the exhibits presented by the government show that he was confined in the military hospitals at Camp Jos. E. Johnston, Fla., and at Fort Sam Houston, Tex., and that his disability began about January or February of 1918, and that he was in the neur-psychiatric ward for almost a year.

Appellee detailed from the witness stand his many attempts to work at different places. His testimony shows that he suffered from headaches and weakness and had to take frequent rests all the time, and that his health continually bothered him. With the help of his wife he attempted to operate a milk route for about two years. At times a hired man assisted with the work, and from the testimony of other witnesses it can be inferred that the wife managed the business affairs and did nearly all of the work.

Other witnesses testified that: "He seemed different than he was when he went away. He seems nervous and a little more unsettled." "He was nervous and excitable." One witness said: "I have seen him go all to pieces and fall down." "You couldn't put any reliance on him. I know that he and his wife were running a little milk ranch. His wife did most of the work. I have gone there when he would be in the house taking a cold bath or something, claiming that he was sick and couldn't do anything and she would be in the barn milking alone." "His wife made most of the decisons, if I have heard him ask her once, I have heard him ask her a hundred times. She would go ahead and give her opinion and tell him what she thought about it." "In my opinion he was not fit to work. He seemed to be nervous, jumping around. He wasn't capable of handling the work I had and I never hired him for that reason. I had contract work, grading, team work of all kinds." "He was flighty and nervous. If he started to do anything he would probably do an hour's work and run off and go take a hot shower bath. He would come back, probably work for an hour and do the same thing over again."

Some of the witnesses who knew him before he entered the service stated that there was nothing unusual about his condition then, that he worked for one of them before the war and "was in A-1 shape. He hit the ball like the rest of the men and no laying down on any of his work at all."

A. H. Fulkerson, half-brother of the plaintiff's father, with whom he lived for a time after leaving the Army, testified: "When I found out he was in San Antonio I went up there to see if I could get him out. I met him there after his discharge. I think I made five trips to San Antonio before I got him out. He was in the hospital there. I saw him first about a month before he was discharged; maybe six weeks. He seemed in very poor health, both in body and mind; seemed not to be all together; complained of headaches, nervousness and stomach, and when he would wake up after sleeping would show what I thought was nervousness. I was with him at the time of his discharge. His mental and physical condition were bad, very bad. He kept complaining of his stomach, his heart and having pains through his breast, and different parts of his body. When he came home with me I couldn't see that he was a bit improved from the time he was discharged. * * * After he left my place in the fall of 1919 or spring of 1920 I think I saw him again in 1926 at my house. * * * I could see very little change in him. He had nervous spells."

Two of the witnesses produced by the plaintiff were medical men.

One of these, Dr. J. W. Ingram, testified: "I have been practising medicine in the State of Washington since 1919. Prior to that I had three years of practice. I held a professional position, both state and federal, as I am chief surgeon for the United States Commission, by Federal appointment. I have been chief surgeon for Washington State penitentiary 13 years. I have had to do with mental cases and insane people to some degree. I have examined Finas Fulkerson, the first time about eight years ago."

On being asked to give his professional opinion as to the disability of Fulkerson based on his knowledge and observation, he stated: "I simply think he isn't there. He is decidedly mentally deficient."

He further testified that in his opinion, based upon the matters disclosed by the army record and from his personal observation, the appellee was, on the 9th day of April, 1919, suffering from a disability that would render him physically and mentally unable thereafter to continually follow any substantially gainful occupation. He was then asked as to the likelihood of the condition continuing throughout the life of Fulkerson, to which he answered: "Very, very likely. Maniac depressive insanity is classified not only as maniac depressive insanity, but is also

called circular, comes and goes in cycles. The patient will have remissions of a few weeks or a few months. Then it gets worse and with depression and melancholia that comes along in stepladder fashion."

The other physician stated that he found Fulkerson extremely nervous, unable to sleep, with headaches and exaggerated symptoms of persecution. In 1926 he had made a diagnosis of neurasthenia to a marked degree, and that since then "his condition had progressed. He was worse and more nervous." He further stated that this neurasthenia to such a marked degree was "A mighty serious proposition. You might call it insane"; that he had hallucinations of persecution which is a symptom of maniac depressive insanity.

■■ It is well settled that, if there is any substantial evidence to which the jury may properly give credence and which, viewed in its most favorable aspect, would sustain a verdict favorable to the plaintiff, then the court is not authorized to enter an order of dismissal or to direct the jury to return a verdict for defendant. Asher et al. v. U. S. (C. C. A.) 63 F.(2d) 20; U. S. v. Lesher (C. C. A.) 59 F.(2d) 53.

The testimony as a whole, from which we have taken the instances hereinbefore set forth, was sufficient to make out a case for the jury.

■■ It is not necessary that proof of absolute incapacity to do any work at all be produced, U. S. v. Sligh (C. C. A.) 31 F.(2d) 735; Ford v. U. S. (C. C. A.) 44 F.(2d) 754, nor do unsuccessful efforts to work rebut testimony advanced as to disability. U. S. v. Eliasson (C. C. A.) 20 F.(2d) 821, 824; Knight v. U. S. (D. C.) 45 F.(2d) 202.

We find no error in the ruling of the court.

Judgment affirmed.