(No. 30409.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRWIN KADENS, Plaintiff in Error.

*Opinion filed March 18, 1948.*

Charles A. Bellows, of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William J. Tuohy, State's Attorney, of Chicago, (John T. Gallagher, Melvin S. Rembe, W. S. Miroslawski, and Clement D. Cody, all of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Plaintiff in error, Irwin Kadens, was indicted on the charge of robbery with a gun in the criminal court of Cook County at the November, 1942, term of said court. Thereafter, a petition was filed on November 4, 1942, alleging that plaintiff in error was insane and incompetent to plead to the indictment. On the presentation of this petition a jury was impaneled and found by its verdict that plaintiff in error was at the time of the impaneling of the jury insane, and ordered him committed to the Department of Public Welfare for confinement in the Illinois Security Hospital until he shall have recovered from his insanity. On September 19, 1946, a petition for writ of *habeas corpus* was filed with the clerk of the criminal court of Cook County, alleging that Kadens had permanently recovered from any insanity previously suffered by him and praying that a writ of *habeas corpus* be issued, directed to the superintendent of the Illinois State Security Hospital at Menard, commanding that he bring Kadens before the criminal court of Cook County, and that a jury be impaneled to determine whether he had now permanently recovered from any insanity suffered by him. On October 14, 1946, a jury was impaneled to try the issues and at the conclusion of all the evidence, which included the testi-

mony of medical experts and several jail guards, who testified that they had seen and watched the behavior of Kadens for a number of months and expressed an opinion as to his sanity, the court directed the jury to find by its verdict that Kadens had not fully and permanently recovered from his insanity.

Plaintiff in error's counsel assigns and urges as error: (1) Section 12 of division II of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 592,) is unconstitutional and in violation of the constitution of the United States, namely, amendments V and VI, and section 2 of article II of the constitution of the State of Illinois; (2) the trial court erred in construing the meaning of the words "fully and permanently recovered from said insanity" as stated in section 12 of division II of the Criminal Code; (Ill. Rev. Stat. 1947, chap. 38, par. 592;) (3) the trial court erred in directing the jury to find that Irwin Kadens had not fully and permanent recovered from said insanity.

Section 12 of division II of the Criminal Code, (Ill. Rev. Stat. 1947, chap. 38, par. 592,) so far as applicable to the present inquiry, provides that, "If a person be charged by indictment with the commission of a felony, and if before trial the judge before whom said cause is pending shall, in accordance with the law, impanel a jury to ascertain before a plea whether or not said person is insane or feebleminded, and if said jury so impaneled shall by their verdict determine that said person was at the time of the impaneling of said jury either insane or feebleminded, then the court shall commit such person to the Department of Public Welfare. If on such hearing before trial, or upon any hearing subsequent to commitment, the jury shall determine that a defendant is not insane or feebleminded, or has permanently recovered from such insanity or feeblemindedness, then such person shall be subject to trial for the offense with which he is charged by indictment. * * * In all commitments hereunder, it shall be

the duty of the Department of Public Welfare to keep safely the person committed in the institution as directed by the Court, until he or she shall have fully and permanently recovered from said insanity or feeblemindedness."

It is urged by plaintiff in error that the words "permanently recovered" would in every case prevent the release of one restored to his sanity, because no psychiatrist or medical expert can, by examination or diagnosis say that anyone is permanently sane, and that such requirement is equivalent in such cases to an unending or lifelong sentence, regardless of the restoration of sanity to the individual. There can be no doubt that mental experts are able to determine the sanity of an individual, but to determine the future physical condition in which a human being might find himself presents a question difficult of solution.

In the trial before the jury in this case five lay witnesses testified as to the sanity of plaintiff in error. Fred Adduci, called as a witness on behalf of plaintiff in error testified that he had been a jail guard for about four years, that he had occasion to see plaintiff in error every day and that in his opinion he was sane at the present time. Joseph P. Burke testified he was a police officer at the county jail and before that was a house officer at Goldblatt's Department Store, that he had occasion to see plaintiff in error frequently at the jail and talk to him, and that in his opinion he was sane at the present time. He further testified, on cross examination, that he had had experience with insane people in his police work. Fred Mayner, a guard at the Cook County jail testified he had occasion to see plaintiff in error every day for the past five months, that he saw and talked with him and that in his opinion he was sane at the present time. Fred Poe testified he was a guard at the county jail and had known plaintiff in error for about five months, that he had occasion to observe him every day, and that in his opinion he was sane at the present time. Dan Epstein testified that he had been a

jail guard for six months, that he had occasion the past four or five months to talk to plaintiff in error and to see what he did down there and that in his opinion he was sane at the present time.

Dr. Franz Alexander, an expert witness called on behalf of plaintiff in error, testified that he had specialized in psychiatry after the war and had many years' experience as a psychiatrist. He testified at great length and stated that, after a careful examination of plaintiff in error in which he was tested in every conceivable manner as to his sanity, in his opinion plaintiff in error was sane at that time. On cross-examination, however, he testified, "I cannot say he is now permanently recovered." And on redirect examination, he testified, "When I say that I cannot say that plaintiff in error has not permanently recovered from any previous insanity, I mean so far as no person is completely immune to develop any form of disease."

Dr. Ralph Kuhlman, a medical expert in sanity cases, testified that he had made a personal examination of plaintiff in error and stated, "My opinion is that at the present time Irwin Kadens is sane." He stated, however, on cross-examination, "I cannot state that anybody is permanently recovered."

Dr. William H. Haines testified that he graduated from the medical school of the University of Minnesota, interned at St. Luke's Hospital in Chicago and after that was at the Elgin State Hospital for five months; that he was first assistant in psychiatry at the University of Illinois, in 1932, 1933 and 1934, and in 1935 was at Bellevue Hospital in New York City, and was first assistant at the Mayo Clinic in 1936; that he has specialized in mental and nervous diseases; that he is a member of the Chicago Medical Society, Illinois Medical Society, American Medical Association, American Psychiatric Association, and that he is at present an assistant professor of psychiatry at the Uni-

versity of Illinois. He further testified he was called as a witness without compensation; that he went to the jail where plaintiff in error was confined and made a careful examination which included a long list of questions and answers which are set out in the record. At the close of his examination he stated that in his opinion he thought plaintiff in error was sane. However, in further examination, he stated he could not say that plaintiff in error had permanently recovered.

Dr. Ralph C. Hamill, called as a witness for the People, who is a physician of many years experience as a mental expert, and who examined Kadens at the Cook County jail, testified at great length. He stated, "I would say that Kadens did not have true insight and has persisted in the same amnesia for the period described and it is my opinion that as long as he maintains that attitude toward this amnesia I would say that he has not permanently recovered."

Dr. Groves B. Smith, called on behalf of the People, testified at great length as an expert who qualified in every particular, and concluded, "I cannot express an opinion whether Kadens will permanently recover other than to say that at this time he has not. I have hopes that he will." He further stated on cross-examination that plaintiff in error was legally sane.

At the close of this evidence, which was all that was presented, the court read a lengthy statement to the jury with direction: "The statute provides that when a person charged by indictment with the commission of a felony is adjudged insane, he shall be committed in an institution until he shall have fully and permanently recovered from said insanity. The jury would have to find by its verdict that the petitioner Irwin Kadens has fully and permanently recovered from his insanity in order to release him from institutional custody. This jury cannot honestly make such

a finding under the evidence because every doctor called on behalf of the petitioner testified that he could not state that Kadens has permanently recovered from his insanity. * * * Accordingly, I hereby direct the jury to return their verdict according to the undisputed evidence, that the petitioner is not permanently recovered from his insanity." The jury as directed returned such a verdict.

Every psychiatrist for plaintiff in error, and one expert for the People, testified that at the present time the defendant was sane and that he had been in that condition for some time, but all, with the exception of one, was unable to say that he had "permanently recovered." It can thus be seen that plaintiff in error finds himself in the serious position of being pronounced sane by medical experts but cannot be released by reason of the restrictions of the statute requiring proof which he is unable to produce. This presents the serious question as to the proper construction to be given the words as used in the statute, "permanently recovered." Plaintiff in error contends the trial court erred in construing the meaning of the words "fully and permanently recovered" as stated in section 12 of division II of the Criminal Code, (Ill. Rev. Stat. 1947, chap. 38, par. 592,) and for that reason erred in directing the jury to find that plaintiff in error had not fully and permanently recovered from said insanity. From this record it is apparent both from the instructions and from the evidence introduced that the permanent recovery was not confined to the present time, but extended in the future to an absolute condition which could not be determined by medical science.

We are inclined to think such a construction is unreasonable and that the words refer to the present time; that "permanently" does not mean an absolute condition for all future time, but only that the condition to be found was full and permanent recovery at the present time, and that such condition was reasonably certain to continue. It is

elementary that all law must be based on reason and to construe these words to mean absolute as to the future would be placing thereon an unreasonable construction.

The construction of the word "permanent" has been before the court many times in insurance cases and as was said in *Prudential Insurance Company of America* v. *Zorger*, 86 F. 2d 446, 108 A.L.R. 498: "The answer to the present problem hinges on the construction to be placed upon the word 'permanent' when used in connection with the disability provisions of insurance contracts. If it is to be given the strict and narrow meaning of unchangeable under any and all circumstances, then indeed there is no logical reason why a judicial determination of such condition, once had, should not endure for all time. The insured, however, has never been held to such a narrow and restricted meaning of the word 'permanent' when seeking benefits under a policy providing for payments when permanently disabled, but rather has been permitted recovery upon proof of a condition that would appear at the time to be reasonably certain to continue. *Johnson* v. *Mutual Trust Life Ins. Co.* 269 Ill. App. 471; *Victor* v. *Prudential Ins. Co.* 284 Ill. App. 90, 1 N.E. 2d 441; *Starnes* v. *United States,* (D.C.) 13 F. 2d 212; *Mut. Life Ins. Co. of N. Y.* v. *Wheatley,* 243 Ky. 69, 47 S.W. 2d 961. He has never been held to the duty of establishing a condition that would not under any circumstances yield to treatment and must forever remain steadfast. It would be unreasonable that he be required to exclude all possibility of improvement to entitle him to prevail."

It is contended by the People that this court has no jurisdiction to review, either by appeal or writ of error, a determination made in an action commenced under section 12 of division II of the Criminal Code, which is a civil proceeding, in the absence of a statute providing for such review, and it is further urged that no question of personal liberty is properly involved because, regardless

of the decision in the civil proceeding, plaintiff in error is to be detained in custody subject to a criminal trial. In support of this contention they rely on the recent case of *People* v. *Cornelius,* 392 Ill. 599, which follows what was said in *People* v. *Bechtel,* 297 Ill. 312, that an appeal from a verdict of a jury finding that the accused was not lunatic or insane at the time of the inquiry does not lie to this court, as no appeal from a hearing of this kind has been provided for by statute, such a proceeding being not an action at law or in equity, but one wholly preliminary to the trial on the indictment and not a part thereof.

It is unnecessary to take issue with what was said in those cases in order to correctly determine the rule to be applied in the instant case, for the reason that in the cases above mentioned it was not contended that the defendant there had been deprived of a hearing in accordance with the provisions of the statute, which, under an improper construction, deprived him of his personal liberty. In the instant case plaintiff in error is confronted with a construction placed on the statute under which he is denied due process. Being tried under a provision of the statute given an improper construction he was denied a proper trial by jury.

It is contended by the People that no question of personal liberty is involved for the reason the defendant in this case must, in any event, be held in custody subject to trial on the criminal indictment. With this we cannot agree, because under the construction given the statute under which plaintiff in error was tried, he never could be given his liberty, as evidence could not be produced, based on medical science or otherwise, to prove his permanent recovery.

We held in the cases of *People* v. *Scott,* 326 Ill. 327, and *Superior Coal Co.* v. *O'Brien,* 383 Ill. 394, that a writ is invariably allowed when property rights or personal liberty is involved, depriving one of due process of law.

We are of the opinion that in a situation of this kind, where the question of the construction of a statute is presented which has prevented a person from receiving due process of law, this court has jurisdiction to make such determination as to afford a proper trial by jury.

In accordance with our views heretofore expressed, the judgment is reversed and the cause is remanded to the criminal court of Cook County for a new trial.

*Reversed and remanded.*