### BIRMINGHAM v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1925.)

No. 6813.

1. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—**Liability of United States on war risk insurance contracts is statutory.**

The United States government, in putting in effect its plan of war risk insurance, did not become an insurer in a commercial sense, for gain, and can be held on its contracts only to the extent that it has expressly consented to be bound.

2. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—**Government cannot be bound by waiver by officer or employee as to war risk insurance.**

Acceptance by an employee of payment of a premium due on a policy of war risk insurance, which had lapsed because of its nonpayment, after the death of insured, did not bind the government as a waiver which revived the policy.

3. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—**Lapsed policy of war risk insurance can be reinstated only as provided in regulations.**

A policy of war risk insurance, which has lapsed for nonpayment of premiums, can be reinstated only as provided in the regulations made under and authorized by War Risk Insurance Act, § 13, as added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), and cannot be reinstated after insured's death.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by Louise Birmingham against the United States. Judgment for the United States, and plaintiff brings error. Affirmed.

Edward W. Foristel, Oscar J. Mudd, Oscar Habenicht, and Walter M. Hezel, all of St. Louis, Mo., for plaintiff in error.

Allen Curry, U. S. Atty., Claude M. Crooks, Asst. U. S. Atty., and Leland A. Wind, Atty. U. S. Veterans' Bureau, all of St. Louis, Mo.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. This case was submitted on brief without oral argument. The petition of plaintiff in error sets forth that she is the mother of Peter Martin Birmingham, who was in the military service of the United States of America, and that on the 1st day of February, 1918, the defendant in error by its certain certificate or policy of life insurance, in consideration of a certain premium then paid and thereafter agreed to be paid, insured the life of the said Peter Martin Birmingham, whereby it promised and agreed, upon the death of the insured, if at that time the conditions of said policy had been complied with, to pay plaintiff in error, the beneficiary in said policy, the sum of $10,000; that on or about the 2d day of July, 1919, said soldier died. The petition further stated that at the time of death the conditions of said policy had been complied with; that said contract of insurance was in full force and effect; that due notice and proof

of death had been furnished defendant in error, and demand made for payment, which was refused.

Defendant in error by its answer admitted the issuance of the policy, but denied the other allegations of the petition. Further answering, the defendant in error stated that on the 12th day of April, 1919, said Peter Martin Birmingham was discharged at Jefferson Barracks, per demobilization, and that his physical condition when discharged was good; that no premium on his war risk insurance had been paid subsequent to his discharge on the above-mentioned date, nor had any premium been paid by any one for him on account of said policy; and that said policy of insurance lapsed for nonpayment of premiums on March 31, 1919.

By amended reply plaintiff in error stated that the premiums accruing between the date of said discharge and the date of death, in the sum of $19.20, were paid to defendant in error shortly after the death of the insured; that the said Peter Martin Birmingham died on or about the 2d day of July, 1919, and that on or about the 6th day of July, 1919, plaintiff in error notified defendant in error, and at or about the same time inquired as to the status of said insurance. Further replying, plaintiff in error stated that after due notice of the death of the insured, and with full knowledge thereof, she was informed by defendant in error that premiums in the amount of $19.20 were in arrears on said insurance, and she was requested to forward that amount to defendant in error in payment thereof; that she did forward the same by money order, and that this payment was duly received and accepted by defendant in error on or about July 28, 1919, and receipt given therefor. It was further pleaded that defendant in error thereby waived the prompt payment of the premiums, and waived any purported defense based upon the nonpayment of premiums prior to the death of the insured.

Thereafter defendant in error filed a joint demurrer to the petition and reply of plaintiff in error, which was by the court sustained. Thereupon, plaintiff in error declining to plead further, judgment was entered in behalf of the United States.

[1, 2] This suit is based upon a certificate or policy of life insurance commonly called "war risk insurance." The contention of plaintiff in error is that the United States, in the issuance of this contract of insurance, acted as an insurer for premiums, and not in the exercise of a governmental function, and is therefore liable as an ordinary insurer. It is conceded that at the time of the soldier's death the policy had lapsed for nonpayment of premiums, but it is contended that, because some employee of the government thereafter accepted payment of the premiums that were in arrears the default was waived and the government must be held bound by the original contract. The government in devising and putting in effect its plan of war risk insurance did not enter the field of business in the accepted sense for commercial purposes and pecuniary gain, and therefore does not stand in the same relation to the insured as do ordinary insurance companies. It can be held only to the extent that it has expressly consented to be held upon contracts of this nature. No officer or employee of the government can waive or set aside the provisions of the statute, nor bind the government by any waiver, express or implied.

[3] It being conceded that the policy had lapsed in terms some time before the death of the insured, it becomes necessary to inquire if and in what manner such a policy could be reinstated. War Risk Insurance Act, § 13, as added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk) provides:

"That the director * * * shall administer, execute, and enforce the provisions of this act, and for that purpose have full power and authority to make rules and regulations not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes."

Accordingly, by regulation promulgated December 17, 1918, the following, among other provisions, appear:

"If the insurance has lapsed for nonpayment of premium such insurance may be reinstated: (a) If application is made at any time within two calendar months from the expiration of the calendar month in which the premium was payable, upon the applicant's signed statement to the effect that he is in as good health as at the expiration of the calendar month in which the premium was payable; (b) if application is made at any time subsequent to two calendar months and before the expiration of five calendar months from the expiration of the calendar month in which the premium was payable, upon the applicant's signed statement to the effect that he is in as good health as at the expiration of the calendar month in which the premium was payable, accompanied by a formal report of examination made by a reputable physician substantiating said applicant's statement to the satisfaction of the director of the Bureau of War Risk Insurance."

This regulation was in effect at the time this policy was issued, and thereafter during the life of the soldier. It was expressly authorized in the act itself, and it is a familiar doctrine that regulations prescribed by departments of the government pursuant to statutory authority have the full force and effect of law until revoked, susperseded, or modified. This regulation was read into and made a part of the contract between the government and Birmingham. It being conceded, then, that the insured was in default for nonpayment of premiums, and that his policy had lapsed for that reason before his death, it is obvious that that policy could be reinstated only in the manner expressly. provided. No application for reinstatement had been made prior to Birmingham's death. One of the requirements of such an application is the filing of the applicant's signed statement to the effect that he is in as good health as at the expiration of the calendar month in which the defaulted premium was payable. This provision unavoidably excludes the possibility of reinstating the policy of a dead man. The controlling effect of this requirement is further emphasized in the various provisions of the regulation promulgated May 17, 1919, in Treasury Decision No. 45, in which reinstatement of policies under the various circumstances therein dealt with is made subject to this provision: "Provided the insured is in as good health as at the date of lapse or cancellation and so states in his application."

Further discussion seems unnecessary. While it is extremely unfortunate that the mother of this young man cannot enjoy the benefits of this policy, owing to its unfortunate abandonment during the life of the insured, nevertheless we cannot set aside the express provisions of law by which such policies are governed.

The judgment is affirmed.