## BEAN v. UNITED STATES.

(District Court, D. Kansas, First Division. June 24, 1925.)

No. 2768.

1. **Army and navy ☞51½, New, vol. 12A Key-No. Series—Evidence held not to show that plaintiff was permanently and totally disabled while war risk policy was in force.**

In suit to recover on policy under War Risk Insurance Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.), for total disability, evidence *held* not to show that plaintiff was permanently and totally disabled while his insurance was in force, or that it was reasonably certain during such time that plaintiff's total disability would continue throughout the remainder of his life.

2. **Army and navy ☞51½, New, vol. 12A Key-No. Series—Contracts of war risk insurance not to be interpreted according to principles governing other contracts of insurance.**

War risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to principles of law governing other contracts of insurance.

At Law. Action by Joseph Fred Bean to recover war risk insurance against the United States. On the merits. Judgment for defendant.

George B. Reinhardt, of Kansas City, Mo., for plaintiff.

John M. George, of Washington, D. C., for U. S. Veterans' Bureau.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan., and John N. Free, Asst. U. S. Atty., of Chetopa, Kan., for the United States.

POLLOCK, District Judge. This is an action to recover war risk insurance. The pleadings disclose:

That the plaintiff entered the United States Army on May 27, 1918, at Camp Funston, and thereafter, and until April 1, 1919, at which date he was granted an honorable discharge, he was in the active service of the United States Army. That while in said military service, on or about the 15th of June, 1918, he applied for and was granted insurance in the sum of $10,000, pursuant to the provisions of the act of Congress commonly known as the War Risk Insurance Act, approved October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.), and which insurance was made payable to him in installments of $57.50 per month for a period of 240 months in case of his becoming totally and permanently disabled while said insurance was in force. That the premiums on said insurance were made payable monthly, and were deducted each month from Army pay during the time he was in said military service, from and after the date of making application for said insurance and including the premium for the month of March, 1919, said deductions from Army pay having been made by the military authorities for the purpose of paying said premiums and pursuant to some arrangement with the Bureau of War Risk Insurance in that regard. That no insurance policy was ever delivered to him for said insurance, but that, pursuant to the terms of the provisions of said War Risk Insurance Act, the directors of said Bureau of War Risk Insurance determined upon and published a form of policy, which was in legal contemplation, but not in fact, issued to said applicants for said war risk insurance, and which provided for the payment of monthly premiums for said insurance on or before the last day of each calendar month, and further provided that the premiums might be paid within 31 days after the expiration of the month, and that during said grace period said insurance should remain in full force and effect. That on March 9, 1918, and pursuant to the provisions of said War Risk Insurance Act, the

director of the Bureau of War Risk Insurance issued certain regulations relative to the definition of the term "total disability" and the determination as to when total disability should be deemed permanent, to wit:

"Treasury Department, Bureau of War Risk Insurance.

"Washington, D. C., March 9, 1918.

"By virtue of the authority conferred in section 13 of the War Risk Insurance Act the following regulation is issued relative to the definition of the term 'total disability' and the determination as to when total disability shall be deemed permanent:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in article III and IV, to be total disability.

" 'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in article IV, on the ground that the insured has become totally and permanently disabled, has recovered the ability to continuously follow any substantially gainful occupation, the payment of installments of insurance shall be discontinued forthwith, and no further installments thereof shall be paid so long as such recovered ability shall continue."

That said regulation was duly approved by William G. McAdoo, Secretary of the Treasury, and that the same has at all times since the issuance thereof been in full force and effect. That while said insurance was in full force and effect he became totally and permanently disabled as a result of tuberculosis, and a complication of other diseases with which he became affected, and which diseases were active and advanced at the time of his discharge from the military service April 1, 1919. That since his discharge from the Army plaintiff has been confined in various government hospitals, to wit, United States Veterans' Hospitals at St. Louis, Mo., Kansas City, Mo., Ft. Bayard, N. M., and Washington, D. C., and that since leaving said hospitals he has been confined to his bed most of the time at Chanute, Kan. That during said times plaintiff has been afflicted with dry pleurisy, diabetes, chronic appendicitis, enlarged liver, gall stones, chronic arthritis, laryngitis, and tumor on the brain, all of which diseases and afflictions, combined with said active tuberculosis, have totally and permanently disabled plaintiff during all of said time since the date of discharge, April 1, 1919, consequently have rendered it reasonably certain during all of said time that plaintiff's total disability would continue throughout the remainder of his life. And that by reason of these conditions the monthly installments of said insurance to the amount of $57.50 each month became due and payable to him from the Bureau of War Risk Insurance, and that the same has been due and owing to him each month since the date of his discharge from the Army April 1, 1919.

That he duly filed with the Bureau of War Risk Insurance, Washington, D. C., his claim for payment to him of the said installments of insurance, but that the Bureau of War Risk Insurance has refused and still refuses to make payment to him of said insurance, or any part thereof, and that a disagreement exists between the plaintiffs and said Bureau of War Risk Insurance as to plaintiff's right to payment of said insurance, and that upon the facts and the law he claims judgment against the United States for the payment to him of the installments of the said insurance for the months from April 1, 1919, to date, and henceforth at the rate and amount of $57.50 each, and for the award of a judgment of attorney's fees for his attorney out of said insurance moneys, and for costs of this action.

The government, by the United States attorney for the district of Kansas, for answer to plaintiff's petition, states that the defendant denies each and every and all and singular the allegations in said petition contained. And by stipulation the parties have filed a waiver of jury trial, and consented that the case be heard and determined on the law and the facts by the judge without a jury.

The proof offered by the plaintiff to establish his case does not conform to or sustain the pleadings. The same is vague, indefinite, and wholly unsatisfactory, not showing that the plaintiff was permanently and totally disabled on April 1, 1919, or within 31 days thereafter, and there is a failure to show that he was permanently and totally disabled while his insurance was in force.

Plaintiff's own testimony discloses: That he entered the service about May 27, 1918. That he was sent to France and was there taken sick of influenza. That he was placed

in hospitals in France, and thereafter sent back to the United States with a casualty outfit. That on reaching the United States he was sent to Ft. Riley, where he was in the hospital for a few days. That he was sent to Camp Funston, where he was discharged April 1, 1919. After his discharge, he went home, remained there until December, 1920, when he went to the Veterans' Hospital at St. Louis, remaining there until the last of March, being treated at the hospital there for his throat and ear. That from St. Louis he went home, remaining there until February, 1921, when he went to Kansas City and entered the hospital at Eleventh and Harrison streets. He remained in the Kansas City hospital until the 1st of May, when he was transferred to the United States Veterans' Hospital at Ft. Bayard, N. M.

From Ft. Bayard he was transferred to Walter Reed Hospital, Washington, D. C., being there about three months. That from Walter Reed Hospital he was transferred home, and that he was in the hospital in Kansas City twice since leaving Walter Reed Hospital, but never remained there long either time. That he left the hospital at Kansas City in May, 1923, and has not been back to any hospital since that time. That he is able to get around the streets of Shawnee, his home town, and that the last physical examination given him was between the 20th and 23d of September, 1923. That this examination was after he came from the hospital, and was made at the Coca-Cola building in Kansas City, and was given by the Veterans' Bureau medical officers, who gave him a complete and thorough examination, testing his lungs and other organs. That he had received compensation from the government for a long time, and that most of his compensation was at the rate of $80 per month during all the time he was in the various hospitals, and that he has not received any compensation since March, 1924. That he refused to permit the doctors to make a complete examination, for the purpose of ascertaining his physical condition. That the doctors wanted to take a puncture to ascertain whether he had tubercular bone, spinal meningitis, or syphilis. That he remembers three different times doctors wanted to make a thorough examination of him, to ascertain whether he was suffering from tuberculosis, spinal meningitis, or syphilis. That he drew compensation from the time he got out of the Army in April, 1919, until the time the payments were stopped. That since his discharge he has spent 18 months in various hospitals. That he has not been in a hospital for 2 years, and that he made no application to be taken back to a hospital during the last 2 years. That he has not figured up how much compensation the government had paid him, and is unable to state whether he had received an aggregate of $4,000 in compensation.

The testimony of Dr. Lindsay S. Milne, Dr. Frank B. Murphy, and Dr. P. H. Owens fails to sustain the plaintiff's allegations in the petition that he was suffering from the disability described from the date of his discharge, or that he had been permanently or totally disabled from the time of his discharge. Quoting from the testimony of these physicians and on examinations made in March, 1923, and September, 1923: "That at the time of these examinations Mr. Bean's general condition appeared to be good, and that he appeared to be able to work, and there was nothing in his condition to indicate he was permanently or totally disabled."

The proof on the part of the government, presented by Dr. John R. Williams, Dr. B. Landis Elliott, Dr. Ferdinand Shoemaker, and Dr. Charles E. Fitzsimmons, is direct and positive, and to the effect that the plaintiff "was not totally disabled"; that, based upon their examination, and "giving the plaintiff the benefit of the doubt," they "could not find that the plaintiff was suffering from permanent or total disability."

When plaintiff made his application for insurance, he authorized premiums to be deducted from his service pay. Upon leaving the service, this authority terminated, and he made no effort to continue his insurance or to pay the premiums direct to the Bureau, making no payments after his discharge on April 1, 1919, and his insurance lapsed 31 days thereafter; and there is no proof to show that the plaintiff was permanently and partially disabled while his insurance was in force. The Bureau's medical records, offered by the plaintiff, show that at the time of his discharge the nature and extent of plaintiff's disability was roughened breathing and weak lungs, 30 per cent. disabled, and this was the extent of the disability claimed by plaintiff on the date of his discharge April 1, 1919, when he filed his application for compensation. Therefore the proof of the government's medical records and the government's medical history shows that he was not totally and permanently disabled at the time of his discharge, nor was he so disabled up to May, 1923, when he re-

fused to further co-operate with the medical officers of the Bureau.

The record in this case shows that the government, through its agencies, the Bureau of War Risk Insurance and the United States Veterans' Bureau, has earnestly endeavored to help Mr. Bean, and have given him the benefit of every doubt. He has been taken into the hospitals on mere asking, and while there was paid $80 a month. During all this time he failed to pay 1 cent in premiums on his insurance, and since his compensation was stopped, he claims total permanent disability by asking that the government pay him $57.50 from the date of discharge and for life.

[1, 2] Plaintiff having failed to show that he was permanently and totally disabled while his insurance was in force, and the proof offered by the plaintiff failing to sustain the allegations of the petition to the effect "that it is reasonably certain during all of said time that plaintiff's total disability will continue throughout the remainder of his life," and the authorities being uniform to the effect that "war risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to the principles of law governing accident insurance, or other contracts of insurance," it follows that the claim of plaintiff must be denied, and the judgment in this case must be in favor of the defendant, and for costs of this action.

It is so ordered.