## TOMLINSON v. UNITED STATES.

District Court, D. Montana. October 8, 1926.

No. 74.

1. Army and navy ⬅⟶51½—Regulations, when adopted and promulgated by Bureau of War Risk Insurance, held to have force and effect of law (War Risk Insurance Act, § 402, as added by Act Oct. 6, 1917, § 2 [Comp. St. § 514uuu]).

Regulations, when adopted and promulgated by the Bureau of War Risk Insurance under authority of War Risk Insurance Act, § 402, as added by Act Oct. 6, 1917, § 2 (Comp. St. § 514uuu), have the force and effect of law.

2. Army and navy ⬅⟶51½—Liability on war insurance contracts held purely statutory.

The liability of the United States on war risk insurance contracts is purely statutory.

3. Army and navy ⬅⟶51½—For permanent disability occurring after lapse of war risk insurance contract for nonpayment of dues there is no liability (War Risk Insurance Act, § 400 et seq., as added by Act Oct. 6, 1917, § 2 [Comp. St. § 514u et seq.]).

Under War Risk Insurance Act, § 400 et seq., as added by Act Oct. 6, 1917, § 2 (Comp. St. § 514u et seq.) and regulations 1 and 2 of Bureau of War Risk Insurance, there is no liability under war risk insurance contract for permanent disability of insured occurring after lapse of the war risk insurance contract for nonpayment of dues, though the disability was of service origin.

At Law. Action by Almeda Tomlinson against the United States. Judgment for the United States.

Loy J. Molumby and Charles Davidson, both of Great Falls, Mont., and Charles E. Pew, of Helena, Mont., for plaintiff.

Wellington D. Rankin, U. S. Atty., and Francis A. Silver, Asst. U. S. Atty., both of Helena, Mont., and C. L. Dawson, Sp. Counsel, of Washington, D. C., for the United States.

PRAY, District Judge. This action is brought to recover on a contract of war risk insurance issued to John Henry Tomlinson, a son of plaintiff, and now deceased. The parties entered into a stipulation as to the facts and waived a trial by jury. It is agreed that Tomlinson entered the military service of defendant, applied for and received a contract of war risk insurance for $10,000, wherein plaintiff was made the beneficiary; that all premiums were paid while the soldier was in the service, but that no premiums were paid after his discharge on July 18, 1919; that on June 21, 1922, the soldier filed a claim for compensation (other than war risk insurance) with the United States Veterans' Bureau, claiming disability in the form of pulmonary tuberculosis, wherein he stated that he had not been treated by a physician since date of discharge; that he had worked as a cook from August, 1919, to June 21, 1920, at a salary of $128 per month, and had worked in a cafeteria from November, 1921, to May 4, 1922, at a salary of $115 per month; that on June 5, 1922, the soldier was admitted to the United States Veterans' Hospital No. 50 at Whipple Barracks, Ariz., where his ailment was diagnosed as active advanced tuberculosis, and that he died of pulmonary tuberculosis on December 24, 1922; that in connection with his claim for compensation, filed June 21, 1922, the United States Veterans' Bureau rated soldier's disability for compensation purposes as follows: No compensable disability from date of discharge until July 3, 1920; 10 per

cent. temporary partial disability from July 3, 1920, to August 31, 1921; 25 per cent. temporary partial disability from November 1, 1921, to April 30, 1922; total temporary disability from May 1, 1922, to June 21, 1922; permanent total disability from June 22, 1922, until date of death, December 24, 1922.

Article 4 of the War Risk Insurance Act of October 6, 1917 (40 Stat. 398, being Comp. St. § 514u et seq.), was enacted for the purpose of giving the persons therein mentioned in active service, in the army and navy, greater protection for themselves and their dependents than is allowed under article 3 of the same act (Comp. St. § 514qqq et seq.), which provides compensation for themselves for disease or injury, and for their dependents, in case of death. Article 4 further provides that "the United States, upon application to the bureau and without medical examination, shall grant insurance against the death or total permanent disability of any such person in any multiple of $500, and not less than $1,000, or more than $10,000, upon the payment of the premiums as hereinafter provided." Comp. St. § 514u.

Pursuant to section 402 of the above act (Comp. St. § 514uuu) the Director of the Bureau, under the general direction and approval of the Secretary of the Treasury, issued Bulletin No. 1, which contained the exact terms and conditions of the contract of insurance, wherein it was provided that such insurance would be payable "to the insured, if he, while this insurance is in force, shall become totally and permanently disabled, commencing with such disability as established by the award of the Director of the Bureau and continuing during such disability." Also in Bulletin No. 1 appears the following requirement: "Premiums shall be paid monthly on or before the last day of each calendar month and will, unless the insured otherwise elects in writing, be deducted from any pay due him/her from the United States or deposit by him/her with the United States, and, if so to be deducted, a premium when due will be treated as paid, whether or not such deduction is in fact made, if upon the due date the United States owe him/her on account of pay or deposit an amount sufficient to provide the premium, provided, that the premium may be paid within 31 days after the expiration of the month, during which period of grace the insurance shall remain in full force. If any premium be not paid, either in cash or by deduction as herein provided, when due or within the days of grace this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the bureau."

. The contract of insurance in question contains the following provision: "Subject to the payment of the premiums required, this insurance is granted under authority of an act amending 'An act entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department," approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract."

[1, 2] Section 402 of the War Risk Insurance Act seems to have conferred ample authority for the adoption of the regulations relied upon by the government, and where lawfully promulgated by the bureau under said act, or amendments thereto, such regulations have the force and effect of law. Liability of the United States on war risk insurance contracts is statutory. Cassarello v. U. S., 279 F. 396–398 (C. C. A. 3), affirming (D. C.) 271 F. 486; Bean v. U. S., 7 F.(2d) 393–396 (D. C.); Birmingham v. U. S., 4 F.(2d) 508 (C. C. A. 8); Richmond v. U. S., 6 F.(2d) 143 (C. C. A. 5); White v. U. S. and Lucy Reeves, 299 F. 855 (D. C.); Helmholz v. Horst, 294 F. 417 (C. C. A. 6).

[3] I have considered the theory of counsel for plaintiff, as I understand it, to the effect that there is no limitation in the law as to the time when permanent disability must occur to entitle the insured or his beneficiary to payments under the contract of insurance, and without payment of premium, providing such disability is of service origin; also the several amendments to the act, the reports of committees of Congress and statements of members as to legislative intent, and I am unable to discover a legislative intent different from that which plainly appears from the language of the act and amendments.

It seems clear to me from the language of the act, the amendments and regulations, and the legislative intent as I interpret it (House Report 130, Cong. Record, 65th Cong., vol. 55, part VII, pp. 6708, 6713–6760, also part VIII, p. 7690), that the continuance of the contract of insurance in force depended upon the payment of a monthly premium, and that such insurance would lapse for nonpayment of premium at the expiration of 31 days of grace. Insurance shall be granted "upon the payment of the premiums as hereinafter pro-

vided" (section 400, being Comp. St. § 514u), and shall be payable "to the insured if he/she while this insurance is in force shall become totally and permanently disabled." Bulletin No. 1.

Sections 403 and 404 (Comp. St. §§ 514v, 514vv) also relate to the payment of premiums. My conclusion is, from the agreed statement and the law, that the policy or contract of insurance lapsed about August 1, 1919, for nonpayment of premium, due on or about that date. In view of his subsequent misfortunes it is to be regretted that the soldier, who was continuously employed for a considerable period of time after his discharge, did not make some provision for keeping his insurance in force for the benefit of his mother. While the government, no doubt, did everything possible for him during his illness under the compensation feature of the act, the opportunity of carrying a large policy of insurance at the low rate fixed by the government should not have been overlooked as it was in this case, and as it has been in many similar cases. Unlike the circumstances of this soldier, there have been many instances where at the time of discharge, and for many months thereafter, the soldier was unable to obtain a living wage, and was therefore compelled to discontinue the payment of premiums.

When confronted by this phase of the case the argument of counsel for plaintiff is persuasive and might prevail, if any ambiguity or uncertainty in the language of the act or the amendments thereto could be found. In view of the agreed statement of facts, since the meaning of the law seems to be clear, I am obliged to find for the defendant in this case.