## JACKSON v. UNITED STATES.

District Court, D. Kansas, First Division.
March 14, 1928.

No. 2961.

1. **Army and navy ☞51½—Evidence held to require finding of soldier's permanent disability at time war risk insurance policy was effective (Act June 7, 1924 [43 Stat. 607], as amended).**

In action on policy of war risk insurance, under Act June 7, 1924 (43 Stat. 607), as amended, evidence *held* to require finding that soldier, having disease of spinal cord, became totally and permanently disabled during period insurance was in force.

2. **Army and navy ☞51½—Occurrence of permanent total disability while war risk insurance is in force creates liability on policy, although insured was not in perfect health when insurance was granted (Act June 7, 1924 [43 Stat. 607], as amended). .**

If permanent total disability occurs while the policy of war risk insurance under Act June 7, 1924 (43 Stat. 607), as amended, is in force, government is liable, and cannot defend on ground that insured was not in perfect health when insurance was granted.

3. **Army and navy ☞51½—Government, having accepted soldier for service, is foreclosed from defending war risk policy on ground of soldier's prior physical disability (Act June 7, 1924 [43 Stat. 607], as amended).**

After government doctors have passed soldier for service, and government has granted insurance under Act June 7, 1924 (43 Stat. 607), government is foreclosed from defending action on war risk insurance policy on ground of insured's prior physical disability.

4. **Army and navy ☞51½—Actions on war risk policy are law actions, and governed by procedure applicable thereto (Act June 7, 1924 [43 Stat. 607], as amended).**

Actions on war risk policies, under Act June 7, 1924 (43 Stat. 607), as amended, are actions at law, and are governed by the usual procedure in actions at law for money damages.

5. **Courts ☞375—State law held applicable in determining government's defense of limitation in soldier's action on war risk policy (Act June 7, 1924 [43 Stat. 607], as amended).**

In soldier's action on policy of war risk insurance under Act June 7, 1924 (43 Stat. 607), as amended, against United States in federal District Court of Kansas, government's defense of statute of limitations *held* governed by statutes of state of Kansas and decisions thereunder.

6. **Army and navy ☞51½—Rules of liberal construction and liberal application of doctrine of waiver did not apply to war risk insurance (Act June 7, 1924 [43 Stat. 607], as amended).**

Ordinary rules of liberal construction of terms of an insurance contract and liberal application of doctrine of waiver should not apply to insurance granted by government under Act June 7, 1924 (43 Stat. 607), as amended, as part of program of assistance to soldiers and sailors of the World War.

7. **Army and navy ☞51½—Provisions of War Risk Insurance Act and rights thereunder are not modified or defeated by regulations pursuant thereto (Act June 7, 1924 [43 Stat. 607], as amended).**

Regulations made under Act June 7, 1924 (43 Stat. 607), as amended, relative to war risk insurance, cannot change provisions of the act, or deprive persons of rights given by the act.

8. **Limitation of actions ☞24(2)—Soldier's action on undelivered war risk policy held action on "contract in writing," within statute of limitations (Act June 7, 1924 [43 Stat. 607], as amended; Rev. St. Kan. 1923, 60—306).**

Action by soldier on policy of war risk insurance under Act June 7, 1924 (43 Stat. 607), as amended, brought against United States, is action on contract rather than upon liability created by statute, and five-year statute of limitation was therefore applicable under Rev. St. Kan. 1923, 60—306; contract being "in writing," even if written certificate was never delivered to soldier, in view of written application for insurance.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Written Contract or Agreement.]

9. **Limitation of actions ☞65(1)—Soldier's action on war risk policy, commenced within five years after disagreement with bureau, held not barred, where plaintiff applied within reasonable time after disability (38 USCA § 445; Rev. St. Kan. 1923, 60—306).**

Under Rev. St. Kan. 1923, 60—306, soldier's action against United States on policy of war risk insurance on claim of total and permanent disability under Act June 7, 1924, § 19, as amended (38 USCA § 445), which makes existence of disagreement with Bureau of War Risk Insurance condition precedent to action on policy, *held* not barred, where commenced within five years of date of disagreement, notwithstanding permanent and total disability occurred more than five years previous, provided plaintiff makes his claim to the Bureau within a reasonable time after the disability occurs; but such "reasonable time" cannot exceed the statutory period.

10. **Equity ☞67—Laches is equitable doctrine, depending largely on circumstances.**

Doctrine of laches is equitable, and turns largely on circumstances of each case.

11. **Army and navy ☞51½—Limitation of actions ☞195(3)—Government had burden of proof on defenses of limitation and laches in soldier's action on war risk policy (Act June 7, 1924 [43 Stat. 607], as amended).**

In soldier's action on policy of war risk insurance under Act June 7, 1924 (43 Stat. 607), as amended, government's defenses of limitation and laches *held* affirmative defenses, as to which government had burden of proof.

12. **Army and navy ☞51½—Evidence held insufficient to sustain government's burden to prove soldier's laches in applying for insurance money for total disability under war risk policy (Act June 7, 1924 [43 Stat. 607], as amended).**

In soldier's action on policy of war risk insurance under Act June 7, 1924 (43 Stat. 607), as amended, for permanent and total disability

known to government by fact of plaintiff's having spent most of his time after becoming disabled in government hospitals, evidence *held* insufficient to sustain government's burden to prove plaintiff was guilty of laches in making application for insurance money.

13. **Army and navy** ⬅51½—**Soldier, suing on war risk policy, held entitled to judgment for past-due installments, with interest, and for future installments (Act June 7, 1924 [43 Stat. 607], as amended).**

In soldier's action for permanent disability under war risk insurance policy, under Act June 7, 1924 (43 Stat. 607), as amended, plaintiff *held* entitled to recover interest on back payments due since date of disability, and to have future payments provided for by judgment; policy being payable in installments.

At Law.    Action by Charles Jackson against the United States.    Judgment for plaintiff.

T. W. Bell, of Leavenworth, Kan., for plaintiff.

Al. F. Williams, U. S. Atty., and L. E. Wyman, Asst. U. S. Atty., both of Topeka, Kan.

McDERMOTT, District Judge.    This is an action at law upon a war risk insurance policy for $10,000, plaintiff claiming to have been permanently and totally disabled while the insurance was in force.    The answer denies the disability and pleads the statute of limitations; it admits that on November 17, 1924, the Bureau of War Risk Insurance rejected his claim and that a disagreement thereupon arose.    A stipulation waiving a trial by jury was filed and the case tried to the court.

After the usual physical examination, the soldier was accepted for service and enlisted in the army on August 1, 1918.    He was discharged prior to the termination of hostilities, and prior to the demobilization of his company, on October 30, 1918, on a surgeon's certificate of disability; his discharge reciting that his physical condition when discharged was "poor."    He was granted $10,000 of war risk insurance on August 7, 1918, which lapsed for nonpayment of premiums on December 1, 1918.    The plaintiff pleads, and the defendant admits, that the following regulation of the Treasury Department defines permanent total disability as used in the statute authorizing the insurance:

"By virtue of the authority conferred in section 13 of the War Risk Insurance Act, the following regulation is issued relative to the definition of the term 'total disability' and the determination as to when total disability shall be deemed permanent.

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed in articles III and IV, to be total disability.

" 'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it.    Whenever it shall be established that any person to whom any installment of insurance has been provided in article IV on the ground that the insured has become totally and permanently disabled, has recovered the ability to continuously follow any substantially gainful occupation, the payments of installments of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

The evidence is undisputed that he performed the ordinary duties of a recruit from the date of his enlistment until about the middle of September, when he fell out of the line while drilling and was thereafter permanently detailed on kitchen police, doing such light work as peeling potatoes and other tasks that can be done without the use of his legs.    His condition became more acute; he was compelled to use a cane; his legs and hips refused to function properly; and on the 30th day of October, he was discharged for the reason above stated.

It is also undisputed that he has performed no work since his discharge.    The plaintiff so testifies, and the government's investigation reveals nothing to the contrary.    It is not seriously disputed that he is now permanently and totally disabled.    He is almost completely paralyzed from the waist down, being able to move only with great difficulty.    He was in a hospital in 1920 for 5 months, and the doctors in charge of that hospital, who examined him daily, and whose evidence is entirely credible, state that his condition was approximately the same then as it is now, and that he was then permanently and totally disabled within the meaning of the law.    Another doctor for the government, who examined him in 1924, testified that he had a disease of the spinal cord and in his opinion was totally and permanently disabled.    Two other doctors for the government, who made most casual examinations, and who could not even recall whether he walked with a cane, but who said that he gave evidence of paralysis, testified that, from their examination, they did not believe him to be totally disabled as far as their examination disclosed.    Their opportunities

for observation were slight, as compared with the other government doctors.

[1-3] I am satisfied that this soldier became totally and permanently disabled while his insurance was in force. I do not agree with the plaintiff's contention that the disability was caused by the injections of the typhoid and paratyphoid serums. The cause of his disability is undoubtedly syphilis, which existed long before his enlistment. The insurance granted covers any permanent total disability that occurs while the insurance is in force, and the cause of the disability is not of importance. If permanent total disability occurs while the insurance is in force, there is liability, and the government cannot defend because the insured was not in perfect health when the insurance was granted. As a matter of fact, a man who is permanently and totally disabled is not accepted for service in the army, and when the government doctors passed him for service, and the government granted the insurance, the government is foreclosed from defending upon ground of prior physical disability. Counsel for the government in the instant case was fair enough to so state. He said:

"Mr. Guffy: If your honor please, if this plaintiff became permanently and totally disabled while his insurance was in force, then it matured without regard to what the disability was."

This was decided in Jagodnigg v. U. S. (D. C.) 295 F. 916.

There remains the question of the statute of limitations. The defendant contends, and the plaintiff agrees, that the plaintiff must have been permanently and totally disabled during the term of his policy, which lapsed on December 1, 1918, in order to recover. The government contends that the applicable statute of limitations is 5 years, and, since the suit was not commenced until November 4, 1925, that the claim is barred by the statute.

The plaintiff, on the other hand, contends that the statute of limitations does not begin to run until he could have filed a suit on the claim; that, by virtue of the federal statute, a suit could not be maintained until a disagreement existed between him and the Bureau of War Risk Insurance. It is admitted that disagreement arose on November 17, 1924. The plaintiff contends that the statute does not bar the claim until 5 years have elapsed after the disagreement arose.

To this contention the defendant responds that the disagreement is part of the remedy, and not of the right; that a plaintiff may not toll the statute of limitations by failing to take a step necessary to perfect the remedy; that, if he could, a plaintiff might delay action for 50 years.

Section 19 of the Act approved June 7, 1924, as amended (38 USCA § 445), makes the existence of a disagreement a condition precedent to an action on a war risk policy. It has been correctly held that in the absence of such a disagreement, an action may not be maintained. Reece v. United States, 17 F. (2d) 856 (D. C. Mo.); United States v. Lyke, 19 F.(2d) 876 (C. C. A. Ariz.).

[4] Actions on war risk policies are actions at law, and are governed by the usual procedure of the court in actions at law for money damages. Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401.

[5] The statutes of Kansas, and decisions construing that statute, govern in the case at bar. In Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 16 S. Ct. 810, 40 L. Ed. 986, the court said:

"The limitation of actions is governed by the lex fori, and is controlled by the legislation of the state in which the action is brought, as construed by the highest court of that state, even if the legislative act or the judicial construction differs from that prevailing in other jurisdictions."

A suit by a trustee in bankruptcy, in the federal court, to recover a stockholder's liability, is governed by the state statute of limitations, and the state decisions construing it. Harrigan v. Bergdoll, 270 U. S. 560, 46 S. Ct. 413, 70 L. Ed. 733. To the same effect, see Bauserman v. Blunt, 147 U. S. 647, 13 S. Ct. 466, 37 L. Ed. 316; Security Trust v. Bank, 187 U. S. 211, 23 S. Ct. 52, 47 L. Ed. 147; Black v. Elkhorn Mining Co., 163 U. S. 445, 16 S. Ct. 1101, 41 L. Ed. 221. The Kansas statute provides that an action on a written contract must be brought within 5 years; an action upon a liability created by statute, other than a forfeiture or penalty, must be brought within 3 years. Section 60 —306, R. S. Kan. 1923.

In order to determine which statute is applicable, it is necessary to determine the nature of the liability under a war risk policy. It has been held that the liability of the United States on war risk insurance contracts is purely statutory. Tomlinson v. United States (D. C.) 18 F.(2d) 795. On the other hand, it has been held that it is purely contractual, and the contract should be liberally construed in favor of the insured. Starnes v. U. S. (D. C.) 13 F.(2d) 212.

The authority of the United States to grant war risk insurance is conferred by

statute. The provisions of that statute as to the class of persons to whom insurance may be granted, the limits in amount, the persons who may be designated as beneficiaries, are valid limitations upon the authority conferred, and any contract which the government might undertake to make in excess of such limitations would be invalid. One of the limitations is that the insurance should be subject to the provisions of the act, and of any amendments thereto, and of any regulations thereunder, then in force or thereafter adopted.

[6] The government did not enter this business for gain, but out of its own resources carried a considerable part of the cost of the insurance. The ordinary rules of liberal construction of the terms of an insurance contract, and of the liberal application of the doctrine of waiver, do not and should not apply to insurance granted by the government, as a part of its program of assistance to the soldiers and sailors of the great war.

Subject to such limitations, however, the relation is essentially that of contract. Entering into the contract is a voluntary act on the part of the soldier; the making and continuance of the contract requires the periodic payment by him of certain amounts, in return for which the government engages to do certain things. It is not dissimilar to the contracts made by fraternal insurance societies, which provide that the terms thereof may be changed by subsequent action of the society. When he enters into the contract, the soldier agrees, as a part of his contract, that the provisions thereof shall be subject to any amendments by Congress and to regulations properly made under the act.

In White v. United States, 270 U. S. 180, 46 S. Ct. 274, 275 (70 L. Ed. 530) the Supreme Court said:

"The certificate of insurance provided in terms that it should be 'subject in all respects to the provisions of such act (of 1917 [40 Stat. 398]), of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract.' These words must be taken to embrace changes in the law no less than changes in the regulations. The form was established by the Director with the approval of the Secretary of the Treasury and on the authority of article 1, § 1 [Comp. St. § 514a], and article 4, § 402 [Comp. St. § 514uuu], of the act, which, we have no doubt,

authorized it. The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the government to them if not paternal was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will. If the soldier was willing to put himself into the government's hands to that extent no one else could complain. The only relations of contract were between the government and him."

In Bean v. United States (D. C.) 7 F.(2d) 393, Judge Pollock said that the authorities were agreed that "war risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to the principles of law governing accident insurance, or other contracts of insurance."

In Birmingham v. United States, 4 F. (2d) 508, the Circuit Court of Appeals, Eighth Circuit, said:

"The government in devising and putting into effect its plan of war risk insurance did not enter the field of business in the accepted sense for commercial purposes and pecuniary gain, and therefore does not stand in the same relation to the insured as do ordinary insurance companies. It can be held only to the extent that it has expressly consented to be held upon contracts of this nature. No officer or employee of the government can waive or set aside the provisions of the statute, nor bind the government by any waiver, express or implied."

[7] Regulations made under the law cannot change the provisions of the act passed, and thereby deprive one of a right given by the act. Sawyer v. United States (C. C. A. N. Y.) 10 F.(2d) 416.

[8] Subject to such limitations and qualifications, and for the purpose of determining what statute of limitations is applicable, war risk insurance is contractual, and the statute of limitations governing a suit upon contracts should be applied, and not the limitation prescribed for a liability created by statute.

It does not appear that there was ever delivered to the plaintiff in this case the written certificate of the insurance which the government generally issued to soldiers who

had applied therefor. In Bean v. United States (D. C.) 7 F.(2d) 393, it was held that the absence of manual delivery of such a certificate was not vital, but that it would be considered that, in legal contemplation, the certificate had been issued to the plaintiff. Moreover, it is the law of Kansas that the 5-year statute applies to an oral acceptance of a written offer. Conry v. McLean, 117. Kan. 595, 232 P. 1030. All war risk insurance was granted on written application, and whether the government did or did not get into the hands of the soldier, the written certificate is immaterial; it is still a "contract in writing."

[9] Considering, then, that the case is governed by the 5-year statute of limitations, the question still remains of whether the statute commences to run at the time the liability occurred or at the time the suit might have been brought. The brief of the government sets out the general rule, with which there is no occasion to quarrel, that a plaintiff may not indefinitely toll the statute of limitations by failing to take some procedural step wholly within his power. It is apparent, at the outset, that the jurisdictional "disagreement" here involved is not wholly within the plaintiff's power. With the multitude of claims filed with the bureau, and the time necessarily involved in a proper investigation thereof, much time elapses after the soldier has done his part before the bureau can do its.

Cases are not uncommon where the "disagreement" does not arise for many months, or even years, after the application is made. The time the application is pending in the bureau cannot, in justice, be charged to the soldier. Moreover, the time for filing the application is not necessarily the time when the physical disability occurred. A soldier cannot honestly apply for payment under his policy until he is satisfied in his own mind that his disability is "permanent." Time cannot start, under any theory, to run against him until he is not only disabled, but has given up hope of being cured. "Hope springs eternal in the human breast." In the instant case, a paralysis of the legs, it is probably true that the plaintiff, going from one hospital to another, did not easily despair of at least a partial recovery.

The rule must be either: (1) The statute of limitations starts when the soldier is disabled and knows it is permanent, runs until he applies for his insurance, stops until the "disagreement," and then starts again to run: or (2) the statute does not start to run until the "disagreement" exists, the government

having, in addition to the defense of limitation, the defense of laches in filing his claim, with the usual limitation that the time for filing the claim must not exceed the statute on the claim.

Since the question is decided by the law of Kansas, the cases cited by the government from other states are not persuasive, in the presence of Kansas cases in point. I have, however, examined such cited cases, and find nothing in them opposed to the rule laid down by the Kansas decisions.

The Kansas decisions are clear. In Kinnard v. Stevens, 122 Kan. 348, 251 P. 1085, the plaintiff sued to set aside a conveyance on the ground of fraud. More than the statutory period had elapsed, but, because the plaintiff could not bring the action until he had first reduced his claim to judgment and execution had been returned "nulla bona," the court held the statute did not start until the return of such execution. The court said:

"The statute of limitations does not commence to run against a cause of action until the accrual thereof, and the accrual of the cause of action means, of course, the right to institute and maintain an action for its enforcement. Young v. Buck, 97 Kan. 39, 154 P. 213, on rehearing, 97 Kan. 195, 154 P. 1010; Hardware Co. v. Semke, 105 Kan. 628, 185 P. 732; 37 C. J. 810."

In Henley v. Myers, 76 Kan. 723, 93 P. 168, 93 P. 173, 17 L. R. A. (N. S.) 779, the earlier Kansas cases are reviewed, and the law carefully and accurately stated. There the preliminary step to suit went to the remedy, and not the right, and the step was one altogether within plaintiff's power. The court safeguarded the rights of the defendant against the possibility of a 50-year delay, suggested by the government in this case. The court said:

"It was within the power of the judgment creditor to cause these preliminary steps to be taken at any time, and he could not extend the statute of limitations indefinitely by neglecting to act. It was incumbent upon him to perfect his right of action within a reasonable time, which could never be more than the statutory period. West v. Topeka Sav. Bank, 66 Kan. 527, 72 P. 252, 63 L. R. A. 137, 97 Am. St. Rep. 385."

The second syllabus of Railroad Co. v. Burlingame Tp., 36 Kan. 628, 14 P. 271, 59 Am. Rep. 578, is:

"Where preliminary action is essential to the bringing of an action upon a claim such as is required of the township trustee in chapter 105 of the Laws of 1876, and such

precedent action rests with the claimant, he cannot prevent the operation of the statute of limitations by long and unnecessary delay in taking such action; but the statute will begin to run in a reasonable time after he could by his own act have perfected his right of action; and such reasonable time will not in any event extend beyond the statutory period fixed for the bringing of such an action."

To the same effect, see Henley v. Myers, 76 Kan. 723, 93 P. 168, 93 P. 173, 17 L. R. A. (N. S.) 779; Kulp v. Kulp, 51 Kan. 341, 32 P. 1118, 32 L. R. A. 550; Donaldson v. Jacobitz, 67 Kan. 244, 72 P. 846; Young v. Buck, 97 Kan. 195, 154 P. 1010.

The suit having been commenced within 5 years of the accrual of the cause of action, the "disagreement," the statute is not a bar. If the plaintiff failed to apply for his insurance within a reasonable time (not to exceed 5 years) after he knew his disability was permanent, the government might interpose a defense of laches. Such defense is not pleaded.

[10-12] Passing the question of pleading, the defense is not made out by the record. The record does not show when the petitioner applied for his insurance. The record does show that the government knew he carried insurance, and that the government knew as much, or more, about his disability than the plaintiff, from the day of his discharge in 1918 on. Most of his time has been spent in government hospitals. Laches is equitable, and turns largely on the circumstances of each case. The petitioner knew little of his rights; the government, all there was to know. In any event, both the statute and laches are affirmative defenses, and the government failed to carry the burden of proof. Hazen v. Ferriter, 124 Kan. 261, 259 P. 788; Emerson v. Peters, 110 Kan. 87, 202 P. 601; Beachy v. Jones, 108 Kan. 236, 195 P. 184; Bullock v. Kendall, 80 Kan. 791, 104 P. 568.

This seems to be the most practicable rule. The date of disagreement is a fixed date; the date the disability is known to be permanent is not. It is more flexible and more just. Many a disabled soldier goes from hospital to hospital, hoping and expecting relief; he confuses compensation and insurance; he believes the government, in caring for him and paying him compensation, is doing so under his insurance policy. Cases undoubtedly exist where malingerers fail to put in their claims until the evidence of defense is scattered or gone; in such the government is protected by the rule above quoted.

[13] The plaintiff's policy matured on the date of his discharge, October 30, 1918. Payments at the rate of $57.50 per month have been due since date; similar payments will be due in the future. Is interest recoverable on the back payments; and may a judgment be rendered for future payments? It has been held to the contrary by the Circuit Court of Appeals of the Ninth Circuit, as to both questions. United States v. Lyke, 19 F.(2d) 876. There are three cases cited by that court in support of the decision as to interest:

United States v. North American Co., 253 U. S. 330, 40 S. Ct. 518, 64 L. Ed. 935: The government appropriated private property without condemnation, and action was brought in the Court of Claims for the value of the property. Although the court said it was a hardship on the plaintiff, interest was not allowed, because a statute expressly forbade it. The court said: "Interest may not be added because section 177 of the Judicial Code, re-enacting section 1091 of the Revised Statutes [28 USCA § 284], declares that 'no interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest.'"

United States v. Rogers, 255 U. S. 163, 41 S. Ct. 281, 65 L. Ed. 566: The government condemned property, and the owner claimed, and was allowed, interest from the date of the taking to the date of payment therefor.

Standard Oil Co. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519: Action on a marine policy issued under the same statute as here involved. The plaintiff recovered for loss of a vessel which foundered, because a lieutenant of the British navy boarded the vessel, and, although he did not in fact alter her course, he reserved the right to do so. Interest was allowed, the court saying: "When the United States goes into the business of insurance (Act Sept. 2, 1914, c. 293, § 5 [Comp. St. § 514e]), issues policies in familiar form, and provides that, in case of disagreement, it may be sued, it must be assumed to have accepted the ordinary incidents of suits in such business, including the payment of interest."

The court, in the Lyke Case, distinguished the latter case, because the government was not in the business of insuring soldiers for gain. That is true, but I do not understand that the United States entered the marine insurance business for gain. I understand that it entered that business in 1914, so our com-

merce could be kept on the seas. Private insurers did not care to carry the risk of vessels in a submarine infested sea, nor the risk of a soldier on the fields of Flanders. It may be the government paid a bit more of the carrying cost of soldiers' insurance than it did of marine insurance; but that changes neither the terms of the contract nor the motive for making it.

An opinion by the Circuit Court of Appeals of another circuit is persuasive, and entitled to great weight. But, in the absence of controlling authority, I cannot bring myself to the conclusion that any sound reason exists why the government should pay the Standard Oil Company interest on a lost vessel, and not pay a soldier interest on lost legs, when both are insured under the same statute.

The same decision holds that no judgment can be rendered for future payments. The government has agreed to pay this policy by installments; it has consented to be sued, which means it has consented that a judgment be rendered against it. Congress gave express power for the court to allow attorney's fees, as follows:

"That wherever a judgment or decree shall be rendered in an action brought pursuant to said section 445 of this chapter the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid." 38 USCA § 551.

It would be possible, of course, to award no judgment for the future, retaining jurisdiction, so that, if the government should decline to pay, despite a final judgment, the soldier could make appropriate application for relief. Which way it is done is not very material. The provision with reference to allowing fees makes the first plan the simpler.

A judgment will be entered for the plaintiff, for the payments due, with 6 per cent. interest, and that the bureau shall make future payments as provided by the contract; it will provide that it may be opened up at any time for the purpose of showing that the disability no longer exists, reserving jurisdiction for that purpose. An attorney's fee, not to exceed 10 per cent., will be taxed, payable as provided by law, and the parties may furnish their suggestions as to the amount, in writing, or by other proof; costs to follow the judgment.

It is so ordered.